## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CLYDE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number CIV-06-210-C |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Now before the Court is a Motion to Dismiss [] or in the Alternative, Motion for Summary Judgment filed by Defendant United Parcel Service, Inc. (UPS). Plaintiff Clyde Williams (Williams) filed a response to which UPS filed a reply; therefore, the motion is ripe for disposition. The Court, upon consideration of the litigants' submissions and the applicable law, now **DENIES** UPS's motion.

### BACKGROUND

During Williams' employment with UPS, he maintained a commercial driver's license and drove a tractor-trailer out of UPS's Lawton, Oklahoma, station. (Def.'s Mot., Dkt. No. 23, at 2, ¶ 1.) On February 9, 2004, at approximately 5:15 a.m., Williams' truck exited the roadway, traveled down an embankment and overturned. (Pl.'s Resp., Dkt. No. 25, Ex. 2, at 2.) Shortly thereafter, two UPS managers arrived on-scene and, between 7:30 and 8:00 a.m., observed Williams as having redness of eyes. (Def.'s Mot., at 3, ¶ 4; id., Ex. 3.) UPS, believing it had reasonable suspicion due to the UPS managers' observations, tested Williams for the presence of controlled substances at approximately 1:00 p.m. the same day. (Id. at 3, ¶ 4; id., Ex. 6, at 16.)

Williams did not receive a citation from law enforcement for the single-vehicle accident. (Pl.'s Resp., Ex. 1, at 1, ¶ 4.)

National Diagnostics, Incorporated (NDI), a drug testing laboratory, completed the initial screening results on February 10, 2004; the results were positive for controlled substances. (Def.'s Mot., Ex. 6, at 1.) Secondary screening tests conducted on February 11, 2004, and February 13, 2004, confirmed the presence of controlled substances. (Id.) Dr. H. D. Belk, an employee of NDI and the Medical Review Officer (MRO) for UPS, reported the positive drug test results to UPS on February 14, 2004. (Id., Ex. 4; id. Ex.6, at 17.)

The MRO attempted telephonic contact with Williams to discuss the test results, once on February 16, 2004, and twice on February 17, 2004, all without apparent success. (Def.'s Reply, Dkt. No. 31, Ex. 2, at 1.) The MRO next contacted Becky Knight (Knight), UPS's representative, for assistance in reaching Williams. (Id.) The record is barren with regard to Knight's success in contacting Williams.

On February 27, 2004, the MRO verified Williams' drug test results as positive for the presence of controlled substances and reported the verification to Knight. (Def.'s Mot., Ex. 4; Def.'s Reply, Ex. 2, at 1.) Williams met with UPS that same day and UPS notified Williams he had failed the drug test. (Pl.'s Resp., Ex. 1, at 2, ¶ 10.)

Williams contacted the MRO via telephone on March 1, 2004, and the MRO interviewed Williams and collected information pertaining to a possible legitimate medical explanation for why the drug test results were positive for controlled substances. (Pl.'s Resp., Ex. 7, at 2; Def.'s Reply, Ex. 2, at 1, 3.) On March 2, 2004, Williams again contacted the MRO and requested a

split-sample testing of his urine specimen.  (Pl.'s Resp., Ex. 1, at 2, ¶ 13; id. Ex. 7.)  LabOne

conducted the split-sample testing and reconfirmed the presence of controlled substances.

(Def.'s Mot., Ex. 5.)  UPS subsequently sent Williams a second[1] termination letter on March 9,

2004, stating that he was terminated for failing a drug test.  (Def.'s Mot., Ex. 7.)

Williams now alleges that UPS wrongfully terminated him in violation of Oklahoma's

Standards for Workplace Drug and Alcohol Testing Act (Act) and seeks, inter alia, back pay, lost

benefits payments, and attorney fees.  Williams originally filed his petition in the District Court

of Comanche County, State of Oklahoma.  UPS timely removed the suit to federal court on the

basis of the diversity statute, 28 U.S.C. § 1332.

### STANDARD OF REVIEW [2]

UPS's motion is not directed at potential deficiencies in Williams' claim; instead, UPS

asserts an affirmative defense as it attacks Williams' ability to bring the suit as a whole.  UPS

bears the burden of proving the affirmative defense.  Otero v. Buslee, 695 F.2d 1244, 1248 (10th

Cir. 1982).  Williams initially bears no burden on a motion for summary judgment proffering an

affirmative defense.  Johnson v. Riddle, 443 F.3d 723, 725 n.1 (10th Cir. 2006).  As a result,

summary judgment is proper only if UPS, as the movant, shows "there is no genuine issue as to

any  material  fact  and  that  [UPS  is]  entitled  to  a  judgment  as  a  matter  of  law,"

---

[1]  UPS sent Williams the first termination letter on March 1, 2004, stating that he was
terminated for his negligence which resulted in an avoidable truck accident.  (Def.'s Mot., Ex. 2.)

[2]  Both litigants submitted additional evidence beyond the pleadings.  As there is no unfair
surprise to either litigant, the Court both construes and restyles UPS's motion as one for summary
judgment under Fed. R. Civ. P. 56.  Wheeler v. Hurdman, 825 F.2d 257, 259-60 (10th Cir. 1987);
Fed. R. Civ. P. 12(b).

Fed. R. Civ. P. 56(c), with regard to the affirmative defense asserted.  <u>Johnson</u>, 443 F.3d at 725 n.1.  Only if UPS first demonstrates that no genuine issue of material fact exists as to the affirmative defense must Williams then go beyond the pleadings and present evidence sufficient to establish the existence of a disputed material fact.  <u>Id.</u>

The Court's function, at the summary judgment stage, is not to weigh the evidence but to determine whether there is a genuine issue of material fact in dispute.  <u>Willis v. Midland Risk Ins. Co.</u>, 42 F.3d 607, 611 (10th Cir. 1994).  "An issue is 'genuine' if, [viewing the full record] there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998) (<u>citing Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  "The mere existence of a scintilla of evidence in support of [Williams'] position is insufficient to create a dispute of fact that is 'genuine' . . . ."  <u>Lawmaster v. Ward</u>, 125 F.3d 1341, 1347 (10th Cir. 1997).  "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim," <u>see</u> <u>Adler</u>, 144 F.3d at 670 (<u>citing</u> <u>Anderson</u>, 477 U.S. at 248), or in this instance, the asserted affirmative defenses.  When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmoving party, Williams, and draws all reasonable inferences in his favor.  <u>See</u> <u>Anderson</u>, 477 U.S. at 255; <u>Simms v. Oklahoma ex rel. Dep't of Mental Health</u>, 165 F.3d 1321, 1326 (10th Cir. 1999).

## DISCUSSION

The litigants' core dispute concerns whether Williams may bring a claim under the Act in light of 40 Okla. Stat. § 553(C), an express exception to the Act's coverage.  UPS argues that

the Act is inapplicable as Williams' drug test was required by and conducted pursuant to the Department of Transportation's (DOT) Federal Motor Carrier Safety Regulations (Regulations). In response, Williams argues that the Act is applicable as his drug test was neither required by nor conducted pursuant to the Regulations. The issue in dispute is one of first impression under applicable state and federal law. Accordingly, the Court turns to the Oklahoma statute at issue.

## I.     The Act's Coverage Exception – § 553(C).

The Oklahoma legislature authorized one express exception to the Act's coverage: "Drug or alcohol testing required by and conducted pursuant to federal law or regulation shall be exempt from the provisions of the Standards for Workplace Drug and Alcohol Testing Act and the rules promulgated pursuant thereto." 40 Okla. Stat. § 553(C). As the Oklahoma Supreme Court has not interpreted § 553(C), the Court must interpret the statute by following rules of statutory construction used by the Oklahoma judiciary. United States v. DeGasso, 369 F.3d 1139, 1145-45 (10th Cir. 2004). Accordingly, the Court's statutory construction of § 553(C) must effectuate the intent of the Oklahoma legislature:

> To ascertain intent, one should look to the language of the pertinent statute(s) and presume the legislative body intends what it expresses.
>
> A cardinal precept of statutory construction is that where a statute's language is plain and unambiguous, and the meaning clear and unmistakable, no justification exists for the use of interpretative devices to fabricate a different meaning. Further, terms in a statute are given their plain and ordinary meaning, except when a contrary intention plainly appears and the words of a statute should generally be assumed to be used by the law-making body as having the same meaning as that attributed in ordinary and usual parlance.

Neer v. State ex rel. Oklahoma Tax Comm'n, 1999 OK 41, ¶¶ 15, 16, 982 P.2d 1071, 1078. (citations omitted). Here, § 553(C)'s language is plain and unambiguous, thus the Court gives

its terms their plain and ordinary meaning.  Id.  For the exception to apply, and thus bar

Williams' claim, the Act mandates a two-part conjunctive test:  Williams' drug test must have

been both required by and conducted pursuant to the Regulations.  See § 553(C).

A.    The "Required By" Element.

Williams argues that he was not required to be tested under the Regulations' post-

accident testing procedures; therefore, he concludes that the Act's exception is inapplicable.[3]

Williams is correct in his assertion as the criteria for mandatory post-accident testing are not met

under the facts of the case.  49 C.F.R. § 382.3003.   Nonetheless, Williams' argument is

ineffective as post-accident testing is but one of three circumstances where drug testing is

mandatory: pre-employment testing, post-accident testing, and reasonable suspicion testing.  49

C.F.R. §§ 382.301, .303, .307.  Here, the Regulations required UPS to drug test Williams in light

of its reasonable suspicion, 49 C.F.R. § 382.307(b)[4]; therefore, § 533(C)'s first element is met.

B.    The "Conducted Pursuant To" Element.

Williams next contends that UPS did not follow the procedures set forth in the

Regulations; therefore, he concludes the Act's exception is inapplicable.  In support of his

contention, Williams proffers eight examples of UPS's alleged deficiencies in conducting his

drug test:  (1) UPS did not have actual knowledge of his drug use; (2) UPS's "red-eyes"

observation was not contemporaneous with the accident; (3) UPS failed to timely conduct the

---

[3] Williams does not contest that both he and UPS were subject to DOT's Regulations during the operative events underlying the instant action as indeed they were.  49 C.F.R. § 382.103 (2004).

[4] "An employer *shall require* a driver to submit to a controlled substances test when the employer has reasonable suspicion to believe that the driver has violated the prohibitions of subpart B of this part concerning controlled substances."  49 C.F.R. § 382.307(b) (emphasis added).

drug test; (4) the MRO failed to notify him and gather the required medical information; (5) UPS breached confidentiality by announcing the drug test results to multiple third-parties; (6) the MRO failed to conduct the split-sample testing within seventy-two hours; (7) UPS failed to pay for the split-sample testing; and (8) the MRO failed to use the proper five-part form.   In response, UPS denies each alleged deficiency.   UPS also argues that certain procedures under the Regulations are only applicable to the MRO and not UPS.   Lastly, UPS asserts that the Oklahoma legislature could not have intended for the Court to verify that UPS followed every drug testing procedure required by the Regulations in order for the exception to apply.   The Court will address UPS's arguments in reverse order.

The statute's plain language militates against UPS's asserted interpretation. To "conduct" is "[t]o direct the course of; manage or control. . . . To lead or guide. . . . To comport (oneself) in a specified way." The American Heritage Dictionary 393 (3d ed. 1992).  The term "pursuant" is defined as "[p]roceeding from and conformable to; in accordance with." Id. at 1471.  The Oklahoma legislature clearly intended for all Regulation-mandated procedures be followed before § 533(C) barred a plaintiff's suit under the Act.

Next, UPS attempts to differentiate certain duties and/or procedures under the Regulations as only applicable to the MRO; therefore, UPS concludes, any failure by the MRO does not affect UPS.   UPS's argument is a non sequitur.   Under the Regulations, UPS is responsible for the MRO's compliance with all applicable drug testing procedures.  49 C.F.R. § 40.3 (defining "service agent" to include the MRO); id. §§ 40.11,[5] 40.15.[6]  Consequently, the

---

[5]  "You [the employer] are responsible for all actions of your officials, representatives, and
(continued...)

Court now turns to Williams' eight examples of UPS's alleged deficiencies in conducting his drug test.

      1.      Actual Knowledge.

Williams cites the Regulations' definition of "actual knowledge," which requires direct observation of the use of controlled substances, and apparently implies that UPS lacked actual knowledge sufficient to warrant the giving of a drug test.  To the extent Williams is asserting an argument, and not merely clarifying the standard under which UPS tested Williams, his argument is without merit.  Reasonable suspicion testing does not require actual knowledge.  49 C.F.R. § 382.307(b).[7]

      2.      Observation was not contemporaneous.

Williams argues that UPS's "red-eyes" observation, made two to two-and-one-half hours after the accident, was not contemporaneous with the accident as required by 49 C.F.R. § 382.307(b).  "Contemporaneous" is defined as "[o]riginating, existing, or happening during the same period of time."  The American Heritage Dictionary 406 (3d ed. 1992).  Williams' argument is unavailing as he erroneously links the observation requirement to the occurrence of

---

[5]  (...continued)
agents (including service agents) in carrying out the requirements of the DOT agency regulations."  49 C.F.R. §  40.11(b).

[6]  "You [the employer] remain responsible for compliance with all applicable requirements of this part and other DOT drug and alcohol testing regulations, even when you use a service agent."  49 C.F.R. § 40.15(c).

[7]  Reasonable suspicion exists when UPS bases its determination on "specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odors of the driver.  The observations may include indications of the chronic and withdrawal effects of controlled substances."  49 C.F.R. § 382.307(b).

the accident.  Instead, § 382.307(b) only requires that the observation be made during the time the driver is manifesting physical symptoms potentially related to controlled substance use. Here, the UPS managers directly observed Williams' eyes during the time they were red; therefore, their observation was contemporaneous as required by the Regulations even though the accident occurred approximately two hours earlier.

　　　　　3.　　　Timeliness of Drug Test.

Williams appears to argue that UPS administered his drug test beyond the two-hour limit enunciated in 49 C.F.R. § 382.307(e)(1).  Williams' argument is meritless as the plain language of § 382.307(e)(1)[8] demonstrates that the time limits discussed therein pertain solely to alcohol testing and not drug testing.

　　　　　4.　　　MRO's Notification and Verification Failures.

Williams contends that the MRO failed to contact him and gather information potentially revealing a legitimate medical explanation for the positive drug test as required by multiple regulations.  Contrary to his assertion, the MRO attempted on at least three occasions to contact him and then contacted Knight on at least two occasions to enlist her assistance in contacting Williams, all without apparent success.  At a minimum, the Regulations only require that both the MRO and UPS's Designated Employer Representative (DER) attempt to contact Williams, not that actual contact must be made, prior to verifying the drug test results.  Compare 49 C.F.R. §§ 40.129, .131 (describing the MRO's duties if contact is made) with 49 C.F.R. § 40.133 (describing how the MRO may verify the drug test if contact is attempted but unsuccessful).

---

[8] "If an alcohol test required by this section is not administered . . . ."  49 C.F.R. § 382.307(e)(1).

      5.      Breach of Confidentiality.

Williams asserts in a single sentence that UPS breached its duty of confidentiality when it announced the drug test results to "an entire group of people" in violation of 49 C.F.R. § 40.129(e).  (Pl.'s Resp., at 4.)  Section 40.129(e) is inapplicable as it only regulates how the MRO must communicate the drug test results to the employer; it does not regulate how UPS is to handle the information once it is received from the MRO.  Additionally, other than naming his Union Representative, Steve Cyr, Williams fails to either enumerate the names of the individuals comprising the "entire group of people," explain how UPS violated its duty of confidentiality by announcing his drug test results in the meeting, or even detail the purpose of why UPS and Williams convened the meeting.  See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir. 1995) (declining to consider issues not adequately briefed).

      6.      Seventy-two Hour Requirement.

Williams asserts that UPS failed to analyze his split-sample test within seventy-two hours of his drug test results being announced, primarily due to the MRO's failure to notify him of the seventy-two hour time limit as required by 49 C.F.R. § 40.153.  Williams misinterprets the regulation with regard to when the test must be completed.  In § 40.153, the seventy-two hour period only applies to the time frame in which Williams must request a split-sample test, not when a laboratory must complete the split-sample test.

In addition, Williams' assertion that the MRO failed to notify him of the seventy-two hour time frame is without factual support in the record.  Williams' affidavit only states "nor did anyone tell me that I had to take a split sample test within seventy-two (72) hours."  (Pl.'s Resp,

Ex. 1, at 2, ¶ 11) (emphasis added.)  Williams' affidavit further evidences his misunderstanding

of § 40.153.  The transcript to which Williams cites, assuming its admissibility, is also of no

support as it only demonstrates Williams' March 2, 2004, conversation with the MRO, where

Williams requested split-sample testing; and not their March 1, 2004, conversation where the

MRO collected information concerning a possible legitimate medical explanation for the positive

drug test results.

> 7. Payment Responsibility.

Williams asserts that UPS failed to pay for the split-sample testing as required by 49

C.F.R. § 40.153(d).  The Regulations "take[] no position on who ultimately pays the cost of the

[split-sample] test, so long as the employer ensures that the testing is conducted as required and

the results released appropriately.  49 C.F.R. § 40.173(c).  Id. § 40.153(d).[9]

> 8. Proper Form for Drug Test.

Lastly, Williams claims that UPS used an incorrect seven-part Federal Drug Testing

Custody and Control Form (CCF) as opposed to the correct five-part CCF mandated by 49

C.F.R. § 40.45 for the proper documentation of a DOT urine collection.  In support of his claim,

Williams cites to a UPS letter in which the writer refers to "Step 7."  Williams' claim is meritless

and is, as UPS states, more than likely only a typographical error.  The writer clearly was

referring to the five-part CCF because further in the letter the writer states:  "It is [UPS's]

contention that this form [the CCF] is filled out completely and appropriately as Step 5b is the

final step of that copy."  (Pl.'s Resp., Ex. 10, at 2) (emphasis added).  Furthermore, every copy

---

[9] "[T]he employer may seek reimbursement [from the employee] for the cost of the [split-sample] test."  49 C.F.R. § 40.153(d).

of a CCF filed by the litigants is the correct five-part CCF.  (Def.'s Mot., Ex. 1, at 16; Pl.'s Resp., Ex. 5; Def.'s Reply, Ex. 2, at 4.)

UPS has demonstrated that there are no issues of material fact in dispute with regard to Williams' eight alleged deficiencies.  As UPS asserts an affirmative defense, it bears the burden of proving the affirmative defense.  Nevertheless, UPS has failed to fully demonstrate its entitlement to judgment as a matter of law; that is, UPS has failed to prove its affirmative defense.  Otero, 695 F.2d at 1248; Fed. R. Civ. P. 56(c).  Given the nature of Williams' suit, the Act's exception only bars his suit if UPS conducted his drug test pursuant to the Regulations; therefore, UPS must affirmatively show that all Regulations pertinent to Williams' drug test were followed.  Here, the record is barren of the requisite evidence necessary for that determination. The following list of missing evidence is non-exhaustive:  whether Knight is UPS's DER; the manner in which the MRO verified the drug test results since he could not contact Williams, see 49 C.F.R. § 40.133; and, whether, if needed, the DER complied with 49 C.F.R. §§ 40.131(d) and 40.133 since the MRO solicited UPS's help in contacting Williams.  UPS makes statements in its briefs relating to a portion of the aforementioned list but such statements are not proper summary judgment evidence.  See Tavery v. United States, 32 F.3d 1423, 1431-33 (10th Cir. 1994) (Garth, J., concurring) (explaining proper summary judgment evidence and citing Thornton v. United States, 493 F.2d 164, 167 (3d Cir. 1974) ("statements in a brief do not constitute evidence.")).  As a result, to grant summary judgment in UPS's favor would be inappropriate.

<u>**CONCLUSION**</u>

As delineated above, UPS has failed to shoulder the requisite summary judgment burden.

Therefore, UPS's Motion for Summary Judgment [Dkt. No. 23] is **DENIED**.

IT IS SO ORDERED this 23rd day of August, 2006.


ROBIN J. CAUTHRON
United States District Judge