IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLYDE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV-06-210-C |
| ) | |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On August 23, 2006, the Court denied Defendant United Parcel Service, Inc.'s ("UPS") motion for summary judgment (Order, Dkt. No. 32).[1]  Upon leave of the Court, Defendant has filed additional evidence in support of its motion (Def.'s Additional Evidence, Dkt. No. 35), to which Plaintiff has filed a response (Pl.'s Resp., Dkt. No. 39). Defendant has filed a reply (Def.'s Reply, Dkt. No. 42), and the matter is now again at issue.  Because Defendant has cured the prior evidentiary deficiencies, the Court now GRANTS its motion for summary judgment.

**I. BACKGROUND**

The factual history of this case is laid out in the Court's previous order (Dkt. No. 32) and need not be repeated at length here.  In this case, Plaintiff, who worked as a feeder driver for UPS, brings a claim that Defendant wrongfully terminated him from employment in violation of Oklahoma's Standards for Workplace Drug and Alcohol

---

[1] Defendant's motion was originally styled as a motion to dismiss, or in the alternative, a motion for summary judgment.  In its order the Court construed and restyled Defendant's motion as one for summary judgment.  See Order at 3 n.2.

Testing Act ("Act"), 40 Okla Stat. §§ 551-565, following a confirmation of a positive drug test. Title 40, section 553(C) of the Oklahoma Statutes reads: "Drug or alcohol testing <u>required by</u> and <u>conducted pursuant to</u> federal law or regulation shall be exempt from the provisions of the Standards for Workplace Drug and Alcohol Testing Act and the rules promulgated pursuant thereto." (emphasis added). According to Defendant, Plaintiff was subject to the United States Department of Transportation's Federal Motor Carrier Safety Regulations ("DOT regulations"). In its motion for summary judgment, Defendant asserted that the drug testing of Plaintiff was both "required by and conducted pursuant to" the procedures set forth in the DOT regulations. Thus, Defendant argued that the statutory exemption of § 553(C) precludes Plaintiff from bringing a claim under the state Act, because the Act by its own terms does not apply when drug testing is administered and mandated by federal regulation.

In denying Defendant's motion for summary judgment, the Court determined that the testing of Williams was indeed "required by" federal regulations as outlined in § 553(C). (<u>See</u> Order at 6.) In regard to the "conducted pursuant to" prong of the § 553(C) exception, the Court rejected each of Plaintiff's arguments as to why the testing was not conducted pursuant to federal regulations (<u>see</u> Order at 8-11), and it noted that Defendant had demonstrated there were no genuine issues of material fact in regard to Plaintiff's objections. The Court found, however, that Defendant failed to fully demonstrate that this element had been established and thus failed to prove its affirmative defense. (Order at 12.) The Court determined that a grant of summary judgment was

inappropriate, because Defendant did not present sufficient evidence to "affirmatively show that all Regulations pursuant to Williams'[s] drug test were followed." (Id.)

In light of the Court's findings, Defendant has offered the Court additional evidence in an attempt to establish that Plaintiff's drug testing was indeed conducted pursuant to federal regulations and Plaintiff's claim against Defendant is barred by the Act.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way and is 'material' when it is essential to the proper disposition of the claim." Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006) (internal quotation marks omitted), petition for cert. filed, 75 U.S.L.W. 3266 (U.S. Nov. 3, 2006) (No. 06-638). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere

pleadings themselves." Celotex, 477 U.S. at 324. "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. DISCUSSION

The sole issue before the Court today is whether Defendant has established its affirmative defense, i.e., whether Defendant has demonstrated that the statutory exception to the Act applies and so Defendant is entitled to judgment as a matter of law.

As outlined in its previous order, the only element of the statutory exception that the Court did not find sufficiently established was whether Plaintiff's drug testing was "conducted pursuant to" DOT regulations. In order for § 553(C) to apply, the Court reasoned, "[t]he Oklahoma legislature clearly intended for all Regulation-mandated procedures [to] be followed." (Order at 7.) Defendant has now presented the Court with abundant supplemental evidence, including sworn affidavits, to demonstrate that the testing was in accordance with DOT regulations.

In its prior order, the Court stated that "the record is barren of the requisite evidence necessary" to determine whether the federal regulations pertinent to Plaintiff's testing were followed. (Order at 12.) Specifically, the Court indicated the missing evidence included: (1) whether Rebecca "Becky" Knight, who works for Defendant, was

Defendant's Designated Employee Representative (DER);[2] (2) the manner in which the Medical Review Officer (MRO)[3] verified Plaintiff's drug test results, as he was unable to contact Plaintiff directly; and (3) whether, if necessary, Defendant's DER complied with applicable federal regulations as Defendant's help was solicited by the MRO in contacting Plaintiff. (Id.) The Court will now address each of these deficiencies in turn and then further examine whether Defendant has adequately established its compliance with DOT regulations in conducting Plaintiff's drug testing.

A.   *Ms. Knight's DER Status*

Regarding Ms. Knight's status, pursuant to Fed. R. Civ. P. 56(e) Defendant has submitted Knight's sworn affidavit establishing that she does in fact work for Defendant as a DER and has done so since 1993. (See Decl. of Rebecca Knight, Dkt. No. 35, ¶ 2.) Plaintiff does not contest that Ms. Knight was Defendant's DER at the time of Plaintiff's testing and termination. (See Pl.'s Resp. at 3-4.) Therefore, Defendant has adequately shown the Court that Ms. Knight served as Defendant's DER during the relevant time frame.

B.   *The MRO's and DER's Compliance with Federal Regulations*

---

[2] A DER is defined as "[a]n employee authorized by the employer to take immediate action(s) to remove employees from safety-sensitive duties, or cause employees to be removed from these covered duties, and to make required decisions in the testing and evaluation processes. The DER also receives test results and other communications for the employer, consistent with the requirements" of 49 C.F.R. Part 40. 49 C.F.R. § 40.3.

[3] An MRO is defined as "[a] person who is a licensed physician and who is responsible for receiving and reviewing laboratory results generated by an employer's drug testing program and evaluating medical explanations for certain drug test results." 49 C.F.R. § 40.3.

The DOT regulations require that when an MRO receives a confirmed positive test result, he or she must contact the tested employee directly and confidentially to determine whether the employee wishes to discuss the test result. 49 C.F.R. § 40.131(a). The MRO "must make reasonable efforts to reach the employee," including, at a minimum, "three attempts, spaced reasonably over a 24-hour period," to contact the employee at the telephone number(s) he or she listed on the Federal Drug Testing Custody and Control Form. Id. § 40.131(c). If the MRO is unable to reach the employee, the MRO must document the efforts made to reach the employee and then contact the DER and instruct the DER to contact the employee. Id. § 40.131(c)(1)-(2).

After the MRO contacts the DER, the DER is required to contact the employee immediately and confidentially in order to relay the message that the employee needs to contact the MRO. Id. § 40.131(d). Similarly to the MRO, the DER must make "all reasonable efforts to contact the employee," including at least three documented attempts to telephone the employee, reasonably spaced over 24 hours. Id. § 40.131(d)(2). If the DER is unable to reach the employee within this 24-hour period, he or she must leave a message for the employee by any means available, instructing the employee to contact the MRO. The DER must also contact the MRO and inform him or her of the date and time of this attempted contact. Id. § 40.131(d)(2)(ii).

Under certain circumstances, an MRO may verify a drug test as positive without interviewing the employee. Pursuant to id. § 40.133(a)(3), an MRO may verify a test result as positive if neither the MRO nor the DER, "after making and documenting all

reasonable efforts," has been able to establish contact with the employee within ten days of the date on which the MRO received the confirmed test result. When an MRO verifies a drug test result as positive, he or she must notify the DER of the verification and transmit those results either on the date of verification or the next business day. Id. §§ 40.165(a), 40.167(b). The verifying MRO must also provide to the employer a report describing the test result and verification. Id. § 40.163.

Defendant has submitted an "MRO Verification Interview Worksheet" showing the verification method followed by its MRO, Dr. H.D. Belk. (See Decl. of Rebecca Knight Ex. 1.) The face of the Worksheet shows that the MRO received Plaintiff's test result on February 14, 2004, and he telephoned Plaintiff three times between 12:21 p.m. on February 16 and 1:01 p.m. on February 17. On the first two calls, the MRO left a message for Plaintiff to call him back, and on the third call there was no answer. After his third unsuccessful attempt to contact Plaintiff, MRO Dr. Belk called DER Knight that same day, February 17, and instructed her to contact Plaintiff. (Id.; Decl. of Rebecca Knight ¶ 5.)

Defendant asserts that after receiving Dr. Belk's call, DER Knight both confirmed Plaintiff's telephone number and attempted to contact Plaintiff at the correct number three separate times on February 17 and 18, 2004. (See Decl. of Rebecca Knight ¶ 5 & Ex. 2.) Following her third unsuccessful attempt, DER Knight left a voice message for Plaintiff instructing him to contact MRO Dr. Belk to discuss his test results. (Decl. of Rebecca Knight ¶ 5.) On February 27, 2004, after ten days with no success by either MRO Dr.

Belk or DER Knight at reaching Plaintiff, MRO Dr. Belk verified Plaintiff's test result as positive and notified DER Knight of the verification. (Decl. of Rebecca Knight ¶ 7.) MRO Dr. Belk additionally sent a formal letter on that date providing further information as required by § 40.163. (Decl. of Rebecca Knight Ex. 3.)

Thus, Defendant has presented evidence that the MRO and its DER adequately followed the verification requirements of DOT regulations as outlined above.

*C.  Plaintiff's Additional Arguments*

Plaintiff objects to Defendant's argument on several grounds, none of which is convincing.

1. MRO's Attempts to Contact Plaintiff

First, Plaintiff claims he never received a voice message from MRO Dr. Belk's laboratory or from Defendant on February 16 or 17, 2004. (Pl.'s Resp. at 2; Pl.'s Resp. Ex. 1, Pl.'s Aff., ¶ 1.)[4] MRO Dr. Belk, however, noted at least two dates and exact times that he called and left voice messages for Plaintiff. (Decl. of Rebecca Knight Ex. 1.) The Court's job at the summary judgment stage is not to make credibility determinations but to view the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Even when viewed in this manner, and without inquiring into the credibility of Plaintiff, the Court notes that Plaintiff's denial of

---

[4]The Court notes, however, that Plaintiff's affidavit is internally inconsistent. Although in the first paragraph, Plaintiff claims that "[a]t no time from February 9 through 27, 2004" did he receive "a call/message . . . that identified itself as . . . UPS," in the third paragraph he states that on February 12, 2004, he did receive a call from UPS. (Pl.'s Aff. ¶¶ 1, 3; see also Pl.'s Resp. at 3.)

receipt of a message does not preclude the possibility that MRO Dr. Belk called his telephone number and left messages. The record is bare regarding who else could have accessed any messages left by MRO Dr. Belk. Additionally, there is no evidence to indicate that MRO Dr. Belk was untruthful in documenting the exact dates and times that he telephoned and left messages for Plaintiff. Indeed, as an MRO at a federally-regulated laboratory, Dr. Belk is required to be familiar with the verification protocol, and Plaintiff's failure to receive messages does not raise a genuine issue as to whether MRO Dr. Belk placed these telephone calls in accordance with 49 C.F.R. §§ 40.131(c) and 40.133(a)(3).

    2.    <u>MRO's Verification Interview Worksheet</u>

Next, Plaintiff asserts that MRO Dr. Belk's Verification Interview Worksheet (Decl. of Rebecca Knight Ex. 1) contains various "inconsistencies and omissions." (Pl.'s Resp. at 2-3.) The Court, after reviewing both the Worksheet and Defendant's reply to Plaintiff's objections, finds that each notation cited by Plaintiff, with one exception, has a plausible explanation. Although the handwritten additions to the typed Worksheet do make the contents a bit more difficult to discern, they also demonstrate the considerable effort that was put into compiling a documentary record solely concerned with the Plaintiff's test results and the verification thereof. The only true error on the Worksheet is clearly a mere typographical one; while every other date indication notes the year as year "2004," MRO Dr. Belk accidentally wrote down the date that he reported the verification to DER Knight as "2-27-<u>03</u>." (Decl. of Rebecca Knight Ex. 1) (emphasis added). Under 49 C.F.R. § 40.209, "[a] minor administrative mistake" such as this would

9

not result in cancellation of a drug test because such an error "does not have a significant adverse effect on the right of the employee to have a fair and accurate test." This appears to be the only place such an error occurred. Plaintiff has not shown, or even attempted to show, how MRO Dr. Belk's writing down the wrong year, or any of the other supposed inconsistencies or omissions on the Worksheet, compromised Plaintiff's rights or the integrity of the testing and verification process. Thus, Plaintiff's objections to the MRO Verification Interview Worksheet do not establish any genuine issue as to whether the verification process was conducted pursuant to federal regulations.

3.   Confidentiality

Plaintiff next argues that DER Knight violated the regulations' confidentiality provisions by notifying Plaintiff of the verified positive test results at a hearing on February 27, 2004 – the same day that DER Knight was notified by MRO Dr. Belk.[5] Plaintiff alleges that he, his union representative, and three UPS managerial employees were present at the meeting where he was notified by DER Knight. (Pl.'s Resp. at 4.) DER Knight informed Plaintiff of the verified test result in what she stated was a "confidential manner." (Decl. of Rebecca Knight ¶ 8.)

Plaintiff cites 49 C.F.R. § 40.131(d) as support for his confidentiality argument; this section, however, applies only to the pre-verification process and so was inapplicable

---

[5]Although Plaintiff has submitted a letter from Defendant that set the date of the meeting as February 25, 2004 (see Pl.'s Resp. Ex. 2), it was apparently rescheduled as all other references to the meeting describe it as taking place on February 27, 2004.

after DER Knight was notified by MRO Dr. Belk of Plaintiff's test result verification. Plaintiff has not cited any regulation that identifies DER Knight's manner of notification, within earshot of the employee, his union representative, and other agents of the employer, as not sufficiently confidential. The regulations pertaining to the requirements of the employer and its DER mandate only that an employer is generally "prohibited from releasing individual test results . . . to third parties without the employee's specific written consent." 49 C.F.R. § 40.321. Even assuming that DER Knight did not disclose the verified results to Plaintiff in confidence and that any of the participants at the hearing is considered a third party, the regulations outline an exception to the confidentiality requirement for an "administrative proceeding . . . brought by, or on behalf of, an employee and resulting from a positive DOT drug or alcohol test." Id. § 40.323(a)(1). Therefore, Plaintiff's argument that DER Knight did not perform her duties in notifying Plaintiff pursuant to federal regulations is without merit.

    4.    <u>Split Sample Request</u>

Under id. § 40.153(a), when an MRO has verified a drug test as positive, he or she must notify the employee of his right to have the split specimen tested.[6] The MRO must further notify the employee that the employee has "72 hours from the time [the MRO] provide[s] this notification . . . to request a test of the split specimen." Id. § 40.153(b);

---

[6]In drug testing, a "split specimen" is defined as "a part of the urine specimen that is sent to a first laboratory and retained unopened, and which is transported to a second laboratory in the event that the employee requests that it be tested following a verified positive test of the primary specimen." 49 C.F.R. § 40.3.

accord id. § 40.171. Plaintiff contends he was originally notified by DER Knight of his verified test result on February 27, 2004, and that DER Knight did not inform him of his opportunity to request split-specimen testing. Thus, Plaintiff claims his March 2, 2004, request for a split-specimen test fell outside of this 72-hour window. Under the language of §§ 40.153(b) and 40.171, however, Plaintiff's request was not required to be made within 72 hours of his notification by DER Knight but within 72 hours of notification by MRO Dr. Belk. Plaintiff and MRO Dr. Belk did not communicate with each other until March 1, and it is obvious from Plaintiff's own transcript of the conversation that he was informed during that conversation of his ability to request a split-specimen test. (See Def.'s Reply at 5.) Therefore, Plaintiff's March 2 request for split-specimen testing clearly fell within the 72-hour window that opened on March 1 and so passes muster under §§ 40.153(b) and 40.171. The split-specimen testing request thus occurred pursuant to federal regulations.[7]

    5.    Plaintiff's Presentation of Information Following Verification

An MRO who verifies a test result without interviewing the employee must permit the employee to present information "within 60 days of the verification" which supports the employee's argument "that serious illness, injury, or other circumstances" precluded the employee's contacting the MRO or DER in the allowable time frames. Id.

---

[7] In any case, Plaintiff's argument is without merit as it is undisputed that Plaintiff did in fact receive the test he requested on the split specimen, and so any error was one "that d[id] not affect employee protections" and so would not subject the test to cancellation. Id. § 40.209(b)(2).

§ 40.133(c). On the basis of such information, an MRO may reopen the verification and allow an employee to present information regarding whether there is a "legitimate medical explanation" for the test result. Id. An MRO must verify a test result as positive unless the employee can prove there is a legitimate medical explanation for the presence of drug(s)/metabolite(s) in his or her system. Id. §§ 40.137(a), (c)-(d).

For the first time in his reply brief, Plaintiff asserts that he began undergoing counseling for extreme anxiety and stress the week of February 16, 2004. (Pl.'s Aff. ¶ 6; Pl.'s Resp. Ex. 3.) Plaintiff appears to argue that because of this counseling, he was unable to contact either MRO Dr. Belk or DER Knight within the times provided. (Pl.'s Resp. at 5.) The Court is at a loss to understand how or why Plaintiff's being in counseling "unavoidably precluded contact" with either MRO Dr. Belk or DER Knight. In any case, on March 1 MRO Dr. Belk conducted an interview of Plaintiff and thus afforded him an opportunity to present any information for the positive test results. (See Def.'s Additional Evidence Ex. 1.) MRO Dr. Belk duly noted that Plaintiff had been ingesting multiple over-the-counter drugs and denied using illegal drugs. (Id.) Because Plaintiff did not establish the limited circumstances in which an MRO may change a verified positive test result, see 49 C.F.R. §§ 40.137, 40.149, MRO Dr. Belk did not alter Plaintiff's verified positive test.

Even when the Court views the evidence in the light most favorable to Plaintiff, it is clear that no genuine issue of fact remains regarding whether Defendant conducted its drug testing of Plaintiff "pursuant to" applicable federal regulations. In sum, Defendant

has more than adequately shown that Plaintiff's drug testing was conducted pursuant to the applicable federal regulations.

### III. CONCLUSION

Because Defendant's supplemental evidence establishes that there is no genuine issue of material fact remaining as to whether Plaintiff's drug testing of February 9, 2004, was "required by and conducted pursuant to" federal regulation, Plaintiff's claim under the Oklahoma Standards for Workplace Drug and Alcohol Testing Act is statutorily exempted by 40 Okla. Stat. § 553(C). Defendant is entitled to a judgment as a matter of law.

Defendant's Motion for Summary Judgment (Dkt. No. 23) is hereby GRANTED. Judgment will be entered accordingly.

IT IS SO ORDERED this 17th day of January, 2007.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge